UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

ERIC BERNARD HENDLEY,

    Plaintiff,

v.                                          Case No. 3:23cv15015-MCR-HTC

MARTIN O'MALLEY,
Commissioner of the Social
Security Administration,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

This case is before the Court for review of the final determination of the Commissioner of the Social Security Administration ("Commissioner") denying Eric Bernard Hendley's application for Supplemental Security Income under the Social Security Act (the "Act"). After reviewing the administrative record (Doc. 7), the parties' submissions (Docs. 12-14), and the relevant law, the undersigned concludes the Administrative Law Judge ("ALJ") erred by relying on the opinions of the state agency medical consultants because those opinions were stale and, thus, did not constitute substantial evidence supporting the ALJ's decision. Accordingly, the decision of the Commissioner should be set aside and this matter REMANDED for further proceedings.

## I. Background

### A. Procedural History

Hendley alleges disability due to nerve damage in his left hand and back pain. T. 219. He claims the back pain is related to an injury he suffered on July 30, 2018, when he was 39 years old and working on a ship in Guam. T. 1288, 1311. He has not worked since that date.

The Commissioner denied Hendley's application initially and on reconsideration. T. 83-85, 90-95. The ALJ conducted a hearing on July 13, 2020, and, on September 23, 2020, issued a decision finding Hendley was not disabled under the Act. T. 15, 12-28, 38-51. The Appeals Council denied Hendley's request for further review on December 18, 2020. T. 1-6. Hendley subsequently sought judicial review in the District Court for the Middle District of Florida and the case was remanded back to the Commissioner (on his own motion), who ultimately remanded it back to the ALJ. T. 754-64. A second hearing was held before the ALJ on January 27, 2023. T. 693, 728-49. The ALJ issued his second decision on April 19, 2023, again finding Hendley was not disabled. T. 690-717. As Hendley failed to file written exceptions, the ALJ's decision became the final decision of the Commissioner. T. 691. On June 19, 2023, Hendley initiated the instant action, seeking this Court's review of the Commissioner's final decision. Doc. 1.

The sole issue Hendley presents for the Court's review is whether the opinions of the state agency medical consultants the ALJ relied on in determining Hendley's RFC were "stale" and, thus, do not constitute substantial evidence supporting the ALJ's decision. Doc. 12. As set forth below, the undersigned agrees the opinions were stale and the evidence insufficient to support the ALJ's RFC determination.

**B.     The ALJ's Findings**

The Act defines disability as an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). To be considered disabled, an individual's impairments must be so severe he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Id.* § 1382c(a)(3)(B).

Pursuant to 20 C.F.R. § 416.920(a)(4), the Commissioner analyzes a disability claim in five steps. At step one, the Commissioner determines if the claimant is performing substantial gainful activity. If he is, he is not disabled. At step two, the Commissioner determines whether the claimant's impairments are severe. If any impairment is found to be severe, the Commissioner proceeds to step three to determine whether any severe impairments have lasted or are expected to last for a

continuous period of at least 12 months, and if the impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. If they do, the claimant is disabled. If not, the Commissioner proceeds to step four to determine if the claimant's impairments prevent him from performing his past relevant work. At this step, the Commissioner determines the claimant's residual functional capacity ("RFC"), which is the most the claimant can do despite his impairments. If the claimant cannot perform past relevant work, the Commissioner proceeds to step five and determines whether other jobs exist in significant numbers in the national economy that accommodate the claimant's RFC and vocational factors. If such jobs exist, he is not disabled.

Here, the ALJ determined at step one that Hendley had not engaged in substantial gainful activity since October 23, 2018, the application date. T. 695. At step two, he found Hendley had the following severe impairments: degenerative disc disease; nerve damage to the left hand; and obesity. T. 695. He determined at step three that Hendley did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. T. 695.

At step four, the ALJ concluded Hendley had no past relevant work but had the RFC to perform:

> sedentary work as defined in 20 CFR 416.967(a) except with no climbing of ladders, ropes, or scaffolds; occasional balancing, stooping,

> kneeling, crouching, crawling, and climbing ramps or stairs; frequent handling and fingering; and no concentrated exposure to extreme heat, cold, wetness, vibrations, work around moving mechanical parts, or work at unprotected heights.  In addition, [he] requires a cane to reach the workstation, but does not require it at the workstation.

T. 696, 706.  Based on this RFC, and relying on the testimony of a vocational expert, the ALJ found at step five that there are jobs that exist in significant numbers in the national economy that Hendley could perform.  T. 706.  Thus, the ALJ concluded Hendley had not been disabled from October 23, 2018, the application date, through April 19, 2023, the date of the ALJ's decision.  T. 707.

## II.    Standard of Review

"[R]eview of the Commissioner's decision is limited to whether substantial evidence supports the decision and whether the correct legal standards were applied."  *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 824 (11th Cir. 2010) (citation omitted).  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citations omitted).  Under this limited standard of review, the Court may not make fact findings, reweigh the evidence, or substitute its judgment for that of the ALJ.  *Heatly*, 382 F. App'x at 824 (citing *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005)).

## III. Discussion

Hendley argues the ALJ erred by relying on the "stale" opinions of Dr. Steven Weinshel and Dr. Henry Scovern, the non-examining state agency medical consultants who offered opinions at the reconsideration level of the disability determination.[1] Doc. 12. Specifically, Hendley claims those opinions do not constitute substantial evidence supporting the ALJ's RFC assessment because they were issued in April 2019 and May 2019, and did not take into consideration the nearly four years' worth of medical records dating from May 2019 to April 2023, when the ALJ issued his decision. The Commissioner maintains the ALJ properly relied on the consultants' opinions "and assessed an RFC that was based upon his review of the record as a whole." Doc. 13 at 6.

"A stale medical opinion does not constitute substantial evidence to support an ALJ's findings." *Lamar v. Comm'r of Soc. Sec.*, 2020 WL 548376, at *3 (W.D.N.Y. Feb. 4, 2020) (citation omitted); *accord Michelle S. v. Comm'r, Soc. Sec. Admin.*, 2018 WL 3805739, at *14 n.25 (N.D. Ga. Aug. 9, 2018) (noting the ALJ's decision was not "grounded by substantial evidence" because the only medical opinions of plaintiff's limitations the ALJ relied on were "stale"). Staleness is not

---

[1] At the initial level of the disability determination, a third state agency consultant, Dr. Simon Abelson, concluded Hendley could perform light work with additional limitations. T. 60-63. However, the ALJ found Dr. Abelson's opinion unpersuasive, T. 705, and, thus, it will not be addressed in this Report and Recommendation.

necessarily determined by the passage of time; rather, a medical opinion is stale when it does not account for the claimant's deteriorating condition. *Lamar*, 2020 WL 548376, at *3; *Vanessa R. v. Saul*, 2021 WL 302658, at *3 (W.D.N.Y. Jan. 29, 2021); *see also Tumlin v. Comm'r of Soc. Sec.*, 2021 WL 1214880, at *15 (M.D. Fla. Mar. 31, 2021) ("It is well settled that an ALJ cannot rely on a file-review opinion if post-review developments reflect a significant worsening of the claimant's condition because such an opinion does not amount to substantial evidence.").

Here, Hendley experienced back problems following a work-related injury and underwent surgery to treat those problems. On December 19, 2018, Dr. Robert Hurford performed a left-sided L4-L5 hemilaminectomy with discectomy, and a left-sided L5-S1 hemilaminectomy with discectomy. T. 512-14.

A few months later, on April 24, 2019, state agency consultant Dr. Weinshel predicted, based on his review of the medical records, that one year after the surgery (i.e., by December 17, 2019), Hendley would be able to perform sedentary work with unlimited balancing and climbing of ramps/stairs; frequent kneeling, crouching, and crawling; and occasional stooping. T. 74-77. The ALJ found Dr. Weinshel's opinion "partially persuasive." T. 705.

On May 11, 2019, state agency consultant Dr. Scovern performed a quality review assessment. T. 72-73. Based on his review of the record, Dr. Scovern stated the RFC assigned by Dr. Weinshel was "reasonable currently," but added that

Hendley: (1) would need a cane for "community distances"; and (2) was further limited to only occasional balancing, kneeling, crouching, crawling, and climbing of stairs. T. 72. The ALJ found Dr. Scovern's opinion "persuasive" and the RFC the ALJ assigned Hendley mirrors the limitations set forth in Dr. Scovern's opinion. T. 696, 705.

The 2019 opinions from Dr. Weinshel and Dr. Scovern were the only medical opinion evidence the ALJ relied on to determine Hendley's RFC, even though the ALJ's decision identified functional limitations for Hendley through April 2023. This constitutes reversible error because these doctors' opinions did not consider Hendley's complete medical history and, in determining Hendley's RFC, the ALJ relied on his own lay analysis of the medical records.

As an initial matter, Dr. Weinshel's and Dr. Scovern's opinions predicted what Hendley's RFC would be if he received appropriate post-operative care and his recovery went well following his December 2018 surgery. *See* T. 77 (Dr. Weinshel stating: "It would be expected, given his relatively young age and otherwise good health, that he will be capable of performing at the level of this RFC within 1 year of his back surgery, which was performed on 12/18/2018, with close follow up, proper rehabilitation and adherence to medications."). But, as described below, the record indicates the December 2018 surgery did not produce the positive results Drs. Weinshel and Scovern expected and, instead, Hendley's spinal problems worsened.

One of the last treatment notes Dr. Scovern reviewed before issuing his opinion was from April 5, 2019.  T. 72.  That note indicates Hendley reported continued pain, "similar to what he had prior to surgery."  T. 582.  Although the treating provider recommended Hendley "continue to be treated conservatively," the possibility of an L4-L5 fusion was discussed "if symptoms worsen."  T. 585-86.  On June 19, 2019, Hendley also reported severe low back pain that radiated to his knees, and he was diagnosed with post-laminectomy syndrome.[2]  T. 1564, 1566; *see also* T. 640 (December 2019 record noting the L4-S1 laminectomy "failed to resolve [Hendley's] ongoing symptoms" and lumbar epidural steroid injections in January 2019 failed to provide pain relief).  On June 24, 2019, Dr. Frank Collier completed a workers' compensation form indicating Hendley's functional limitations were so severe at that time that he could not perform activities, even at a sedentary level.  T. 1859-60.  And a March 5, 2020 MRI showed: (1) broad-based central disc herniation at L4-L5 measuring 6mm; (2) central/left central/left subarticular disc herniation at L5-S1 measuring 7 mm; (3) anterior displacement of S1 with respect to L5 by 5mm.  T. 679-80.

---

[2] "Post-laminectomy syndrome (also called 'failed back syndrome') refers to the persistence of pain and disability following spinal surgery. Frequent causes include returning disc herniation, nerve-root compression, scar-tissue build-up (fibrosis), joint hypermobility, spinal instability, and facet joint problems."  *Debbie S. v. Kijakazi*, 2021 WL 4167435, at *7 n.26 (N.D. Ga. Sept. 13, 2021).

Case No. 3:23cv15015-MCR-HTC

Because Hendley's back symptoms continued to worsen, he underwent the fusion surgery contemplated in the April 2019 treatment note. On June 18, 2020, Dr. Rubin Bashir performed anterior lumbar interbody fusion at L5-S1 and L4-L5; insertion of an anterior biomechanical device at L5-S1 and L4-L5; posterior non-segmental instrumentation at L4-S1; and a posterior fusion at L4-L5 and L5-S1. T. 648-50.

This procedure, however, also failed to relieve Hendley's pain. *See* T. 1212 (reporting on August 11, 2020, he "continues to be in a lot of pain"); T. 1210 (reporting on September 1, 2020, "increased pain in his back"). Hendley tried three sessions of aquatic therapy in 2020, "but each session increased his pain." T. 2166. He participated in a spinal cord stimulator trial, which initially provided some relief, T. 1074, but later he could not tolerate the pain and had it removed, T. 1212.

An October 2020 lumbar CT scan showed: (1) minimal posterior subluxation L5 on S1 1-2 mm; (2) mild disc bulging suspected at L5-S1 slightly abutting but not displacing the L5 nerve roots as they exit; (3) some facet hypertrophy with minimal annular disc bulging at L3-4 resulting in mild bilateral lateral recess narrowing with no obvious neural impingement; and (4) facet hypertrophy at L4-L5. T. 1065. On October 18, 2021, Hendley received a permanent spinal cord stimulator implant, which, again, initially provided some relief but later, in 2022, was not "particularly helpful" and did "not seem to be working." T. 867, 1034, 1036, 1091, 1142, 1222.

Between May and November 2022, Hendley routinely visited the emergency room to seek pain medication to relieve his symptoms, and at least one physical exam showed decreased strength in the lower extremities as compared to the state agency medical opinions. *See* T. 992, 997, 1088-1112, 1114-77, 1179-1204, 1221-69, 2432-66.  In addition, a June 16, 2022, MRI of Hendley's spine showed: (1) multilevel degenerative disc and facet disease post thoracic neurostimulator lead placement and L4-L5, L5-S1 interbody and posterior metallic fusion; (2) mild C3-C4 spinal canal narrowing; (3) moderate neural foraminal narrowing at bilateral C3-C4, right C4-C5, left at C5-C6; and (4) mild neural foraminal narrowing at other levels.  T. 1173-74.  A July 2022 MRI of Hendley's thoracic spine revealed: (1) a shallow disc bulge and bilateral facet arthropathy at T8-T9 causing mild to moderate spinal canal stenosis; and (2) a shallow disc bulge at T7-T8 causing mild spinal canal stenosis and mild bilateral foraminal stenosis.  T. 1232.  And October 2022 radiography showed mild degenerative disc height loss at T12-L1.  T. 1191.

When Dr. Weinshel and Dr. Scovern issued their opinions in April 2019 and May 2019, they did not have access to these records.  Thus, they were unaware Hendley had fusion surgery, a spinal cord stimulator implant, and ongoing complaints of pain.  They were also not privy to the most recent diagnostic imaging, which identified abnormalities with the cervical and thoracic portions of Hendley's spine.

Despite the significant medical evidence post-dating Dr. Weinshel's and Dr. Scovern's opinions, the Commissioner argues the ALJ did not err by using their opinions to formulate the RFC because he reviewed all the evidence and determined it was consistent with the opinions. The undersigned disagrees. The ALJ's discussion of how the later medical evidence is consistent with these doctors' earlier opinions is perfunctory at best and conclusory at worst. While the ALJ states that the doctors' opinions are "consistent" with the medical evidence or subsequent records, he fails to explain how so. T. 699-706.

For example, it is unclear how the opinions, which were predictive and assumed Hendley would have a stable recovery from the December 2018 surgery, are consistent with the subsequent spinal fusion surgery in 2020, the additional diagnostic imaging, and the "consistent and ongoing pain complaints."[3] *See Wood v. Comm'r of Soc. Sec.*, 2016 WL 11468574, at *9 (M.D. Fla. Aug. 2, 2016), *report and recommendation adopted*, 2016 WL 4889830 (M.D. Fla. Sept. 15, 2016) (finding "it was error for the ALJ to provide great weight to the opinion of [a non-examining state agency consultant] without resolving how the later evidence may

---

[3] To the extent the ALJ reviewed the additional records, including the diagnostic imaging, and determined independently that the records were consistent with a sedentary RFC, he erred. *See Tankersley v. Comm'r, Soc. Sec. Admin.*, 2018 WL 1466278, at *24 (N.D. Ga. Mar. 26, 2018) (concluding ALJ erred when relying on reviewing physicians' stale opinions and noting "while it is clear that the ALJ did in fact review both MRIs, as well as notes indicating that Plaintiff had multiple injections, nerve ablation treatments, and cervical surgery, an ALJ 'cannot act as both judge and physician'") (citation omitted).

have impacted [his] opinion"); *Lumpkin v. Barnhart*, 485 F. Supp. 2d 1270, 1282 (S.D. Ala. 2006) ("The Court further notes that the opinion of the non-examining medical examiner cannot be given any value in that it was given based on the evidence that existed in July 2003 which represents, at most, only half of the record evidence and less than one year after the declared disability onset date."); *see also Flentroy-Tennant v. Astrue*, 2008 WL 876961, at *8 (M.D. Fla. Mar. 27, 2008) ("An ALJ is required to build an accurate and logical bridge from the evidence to his or her conclusion.") (citation omitted). Contrary to the Commissioner's position, the ALJ's bare bones reference to consistency and supportability are insufficient under the March 2017 amendments to the Act's implementing regulations. *See* 20 C.F.R. § 416.920c(b)(2).[4]

Furthermore, courts have held that medical opinions issued before significant changes in a claimant's health history, including surgery, do not provide substantial evidence for an ALJ's RFC finding. *See Tankersley*, 2018 WL 1466278, at *24 (finding medical opinions of claimant's physical limitations to be stale and thus could not serve as substantial evidence to support the RFC because they were rendered two years prior to the hearing and failed to take into account significant

---

[4] Effective March 27, 2017, the regulations were amended to eliminate the "treating source" rule in favor of an analysis of medical opinions based on supportability, consistency, relationship with the claimant, specialization, and other factors, with supportability and consistency being the most important factors. 20 C.F.R. § 416.920c(b)(2).

Case No. 3:23cv15015-MCR-HTC

evidence, including fusion surgery); *Pagano v. Comm'r of Soc. Sec.*, 2017 WL 4276653, at *5 (W.D.N.Y. Sept. 27, 2017) ("A stale medical opinion, like one that is rendered before a surgery, is not substantial evidence to support an ALJ's finding.").

Based on the significant amount of time that passed from when the consultants issued their opinions and when the ALJ issued his decision, and the significant amount of evidence from that time showing Hendley's spinal problems worsened after his December 2018 surgery, the consultants' opinions do not provide substantial evidence for the ALJ's RFC assessment.  The lack of up-to-date medical opinion evidence created an evidentiary gap, resulting in unfairness and prejudice to Hendley; namely, the ALJ derived Hendley's RFC from opinions which expected improvement in 2019, and which did not consider later evidence showing that improvement never manifested.  *See Colon v. Colvin*, 660 F. App'x 867, 870 (11th Cir. 2016) ("[T]he ALJ has an obligation to develop a full and fair record.  …  In examining whether the ALJ fully developed the record, [the courts] look to see if the record contains [ ] evidentiary gaps that resulted in unfairness or clear prejudice."); *McGarry v. Comm'r of Soc. Sec.*, 2024 WL 639200, at *5 (M.D. Fla. Feb. 15, 2024) ("[A]lthough the ALJ thoroughly considered the medical records and objective testing before and after the April 2022 accident, the record still contained a gap – a gap of a medical opinion or other evidence to support the ALJ's functional-limitation

findings in the RFC.");[5] *see also O'Neal v. Astrue*, 2010 WL 431868, at *7-10 (N.D. Fla. Feb. 2, 2010) (finding "speculative" RFC assessments which were conducted two years prior to the hearing, "without the benefit of several additional months of relevant medical records," and had projected effective dates into the future, were entitled to little weight).

In these circumstances, the ALJ should have ordered a consultative examination to obtain an updated opinion regarding Hendley's functional limitations. *See Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1356 (11th Cir. 2018) (ALJs "are by law investigators of the facts, and are tasked not only with the obligation to consider the reasons offered by both sides, but also with actively developing the record in the case."). Therefore, the decision of the Commissioner should be set aside, and this case remanded for further proceedings consistent with this Report and Recommendation.

Accordingly, it is RECOMMENDED:

1. That the Commissioner's decision be set aside and the matter REMANDED under Sentence Four of 42 U.S.C. § 405(g) for further proceedings consistent with this Report and Recommendation.

---

[5] The Commissioner argues the cases relied upon by Hendley are inapposite because they predate the March 2017 amendments to the regulations. The Court notes, however, that *McGarry* was decided under the new regulations and deals with the same issues presented here – that is, whether the ALJ's RFC's determination is supported by substantial evidence when the ALJ relied on stale opinion evidence and lay interpretations of medical data. *McGarry*, 2024 WL 639200 at *3.

Case No. 3:23cv15015-MCR-HTC

2. The clerk be directed to enter judgment in favor of Hendley and close the file.

At Pensacola, Florida, this 9th day of July, 2024.

*/s/ Hope Thai Cannon*
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations must be filed within fourteen (14) days of the date of this Report and Recommendation. Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control. An objecting party must serve a copy of its objections upon all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. See 11th Cir. Rule 3-1.